IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

PAUL J.,[1]                                                         Case No. 3:22-cv-01769-HL

            Plaintiff,                                        **OPINION AND ORDER**

      v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

            Defendant.

_____

HALLMAN, United States Magistrate Judge:

      Plaintiff Paul J. brings this action under the Social Security Act (the "Act"), 42 U.S.C. §

405(g), to obtain judicial review of a final decision of the Commissioner of Social Security

("Commissioner"). The Commissioner denied plaintiff's application for Disability Insurance

Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the

decision of the Commissioner is AFFIRMED.

_____

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name
for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

### I.    Plaintiff's Application

Plaintiff alleges disability based an L5 SI disc herniation, sciatic nerve pain in his legs, limited mobility, and obesity. Tr. 126.[2]  At the time of his alleged onset date, he was 43 years

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 11).

old. *Id.* Plaintiff has a high school education. Tr. 371. He has past relevant work experience as a heavy truck driver, general foundry worker, and home attendant. Tr. 111. Plaintiff protectively applied for DIB on August 28, 2019, alleging an onset date of May 18, 2015. Tr. 126, 295-98. His application was denied initially on February 18, 2020, and on reconsideration on July 2, 2020. Tr. 135, 156, 171-76. Plaintiff subsequently requested a hearing, which was held on August 25, 2021, before Administrative Law Judge ("ALJ") Linda Thomasson. Tr. 35. Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 35-59. With the assistance of counsel, plaintiff amended his alleged onset date to February 1, 2018. Tr. 70. A vocational expert ("VE"), Sharon Thomas, also testified. Tr. 35. On September 29, 2021, the ALJ issued a decision denying plaintiff's claim. Tr. 29. Plaintiff requested Appeals Council review, which was denied on September 12, 2022. Tr. 1-7, 283-85. Plaintiff then sought review before the Court.[3]

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

---

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 3).

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.   The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity after his alleged onset date through his date last insured of December 31, 2020. Tr. 19.

At step two, the ALJ determined that plaintiff has the following severe impairments: "spine disorder and obesity." *Id.*

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 22. The ALJ then resolved that plaintiff had the RFC to do light work with the following limitations:

> He could lift/carry 20 pounds occasionally and 10 pounds frequently. He could sit up to 6 hours in an 8-hour workday, but no longer than 60 minutes at one time without standing or walking 1-2 minutes, and could stay at his workstation. He could stand 3 hours in an 8-hour workday, but no longer than 40 minutes at one time, and then would need to sit 2-3 minutes. He could walk 3 hours in an 8-hour workday, but no longer than 30 minutes at one time, and then would need to it 2-3 minutes. He could stand and walk a combined total of 6 hours. He could occasionally climb ramps and stairs with a rail, and could occasionally kneel. He could occasionally crouch or stoop, but not repetitively, that is, not more than 2-3 times in a row without a period of not doing those postural activities for 45 minutes. He could not climb ladders, ropes, or scaffolds, and could not crawl. He could not be exposed to vibration, to hazards such as moving mechanical parts, dangerous equipment, or unprotected heights, or to extreme cold.

Tr. 23.

At step four, the ALJ found that plaintiff could not perform any past relevant work. Tr. 27.

But at step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform including work as a parking lot attendant, office helper, and mail clerk. Tr. 28. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 29

PAGE 5 – OPINION AND ORDER

**DISCUSSION**

Plaintiff first asserts that the ALJ erred at step two by improperly finding plaintiff's mental impairments were non-severe. Plaintiff argues that the ALJ erred by "failing to identify, consider, and properly evaluate [plaintiff's] medically determinable severe and non-severe impairments at step two." Pl.'s Opening Br. 4. More specifically, plaintiff asserts that the ALJ simply disregarded plaintiff's testimony regarding his mental health, ignored and mischaracterized medical evidence supporting the severity of his mental impairments, and failed to address how plaintiff's physical impairments contribute to his mental dysfunction. Pl.'s Opening Br. 5-15.

The Commissioner asserts that the ALJ properly found plaintiff's mental impairments non-severe. The Commissioner explains that plaintiff's testimony about his panic attacks was given in April 2021, four months after the expiration of plaintiff's insured status. Def.'s Resp. Br. 11 (citing Tr. 60, 292). The Commissioner argues that plaintiff did not allege disabling mental impairments prior to the hearing, and that plaintiff's medical records and lack of ongoing mental health treatment during the relevant period, support the ALJ's conclusion that plaintiff's mental health impairments were not severe. Def.'s Resp. Br. 11 (citing Tr. 309-12, 318).

For the reasons discussed below, the Commissioner's decision denying plaintiff's claim is affirmed.

**I.    Standards**

At step two, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is both medically determinable and severe. 20 C.F.R. § 404.1520(c). An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence. 20 C.F.R. § 404.1520(c). An impairment is severe if it

significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(c).

The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device

to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

As such, any "error at step two [is] harmless [if] step two was decided in [the claimant's] favor

with regard to other ailments." *Mondragon v. Astrue*, 364 Fed. Appx. 346, 348 (9th Cir. 2010)

(citing *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)).

In making this severity determination, the ALJ is required to first establish the existence

of a medically determinable mental impairment using a Psychiatric Review Technique (PRT), 20

C.F.R. § 416.920a (b). Subsequently, the ALJ must rate the degree of limitation for four

functional areas (activities of daily living; social functioning; concentration, persistence or pace;

and episodes of decompensation). 20 C.F.R. § 416.920a (c). The ALJ must then determine the

severity of the mental impairment based in part on the degree of functional limitation. 20 C.F.R.

§ 416.920a (d). So long as the ALJ rates the limitations caused by the mental impairments for the

four functional areas, the ALJ need not document the considerations underlying its

findings. *Hoopai v.* Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007).

## II.    Application

Here, the ALJ found that plaintiff had a number of medically determinable and severe

physical impairments at step two. Tr. 19. Concerning plaintiff's depressive disorder and anxiety

disorder, the ALJ determined they were medically determinable but not severe because his

mental impairments "did not cause more than minimal limitation in the claimant's ability to

perform basic mental work activities…" *Id.*

Plaintiff testified that he was unable to work due to back and leg pain. Tr. 70. When the ALJ asked him about his mental health, he stated that it had been "deteriorating as of last year" and he had anxiety which made it difficult to leave the house "as far as planned arrangements and things like that." Tr. 71. Plaintiff also testified that he had anxiety attacks five to six times a week, and that he was prescribed Cymbalta. Tr. 74-75.

The ALJ adequately evaluated plaintiff's testimony, and properly applied the PRT when assessing plaintiff's mental impairments at step two. Regarding the first functional area of understanding, remembering, or applying information, the ALJ discussed how plaintiff's active lifestyle demonstrates that he has no limitation in this functional area. Specifically, the ALJ discussed how plaintiff was going to the gym regularly and partaking in household chores and yardwork. Tr. 20 (citing Tr. 442, 453, 461). The ALJ explained that plaintiff went on a cruise to Mexico in 2019, and took trips to Las Vegas in 2020 and 2021. Tr. 20 (citing Tr. 444, 599, 648). Plaintiff asserts that the ALJ mischaracterized medical evidence that corroborate his testimony, specifically citing only to the ALJ's reliance on plaintiff's trip to Las Vegas and how he experienced "extreme anxiety" during the trip. Pl.'s Opening Br. 12, (citing Tr. 648). However, the Commissioner argues that it is notable that plaintiff's anxiety was not so significant that it precluded travel. Def.'s Resp. Br. 15. The court agrees.

Regarding the second functional area of interacting with others, the ALJ correctly found that plaintiff was not limited in this area. The ALJ acknowledged plaintiff's reported issues such as anger and difficulty dealing with family stressors, but ultimately concluded that the medical evidence and his active lifestyle indicated that he was not limited in this area. Tr. 20. Specifically, the ALJ cited to medical records where plaintiff was consistently pleasant and cooperative, and exhibited normal speech and behavior. Tr. 20 (citing Tr. 440-45, 453, 26, 461,

608, 615-16, 624, 633-34). The ALJ also discussed how plaintiff was able to spend time with his

family and go on vacations, run errands, and establish good rapport with doctors. Tr. 20 (citing

Tr. 309-12, 444-45, 599).

Regarding the third functional area of concentrating, persisting, and maintain pace, the

ALJ reasonably found that plaintiff had a mild limitation in this area. Tr. 20. Plaintiff asserts that

the ALJ did not consider how his physical impairments exacerbated his mental impairments, and

that when taken together they should have been found severe. Pl.'s Opening Br. 8-10. However,

the ALJ did address how plaintiff's anxiety and depression increased when he was faced with

stressors such as difficulty in his relationships or occasional flares of back pain. Tr. 20. The ALJ

also acknowledged that plaintiff's anxiety increased in 2020 due to "recent world

circumstances," and that his anxiety symptoms may have affected his concentration at times. Tr.

20 (citing 438-444, 608). However, to support his conclusion that plaintiff was only mildly

limited in this functional area, the ALJ discussed how plaintiff was still being able to accomplish

his activities of daily living, travel, and how he was considering starting his own business. Tr. 20

(citing 443, 461, 599, 309-312). All of these activities are inconsistent with plaintiff's testimony

regarding his mental health.

Regarding the fourth functional area of adapting or managing oneself, the ALJ correctly

concluded that plaintiff was not limited in this area given his daily activities, normal mood and

affect, and how he did not exhibit problems with temper control. Tr. 20 (citing 440-45, 453, 461,

592, 608, 615-16, 624, 633). Therefore, the ALJ correctly conducted the PRT analysis and

adequately discussed plaintiff's testimony and the medical record.

The ALJ then went on to analyze the medical opinion evidence, and correctly determined

that the medical opinion evidence in the record does not support a finding that plaintiff's mental

impairments are severe. Tr. 20. Dr. Bethany Higa, Psy.D wrote a letter on plaintiff's behalf in May 2021 expressing her belief that plaintiff had "PTSD related to a work incident that occurred in 2003" and experienced anxiety secondary to his PTSD, but that plaintiff's "PTSD symptoms were unlikely to interfere with the rigors of being a live organ donor." Tr. 641. Dr. Higa later completed a mental functional assessment in July 2021, and assessed that plaintiff had marked limitations in his ability to sustain concentration, persistence, and pace, and to interact with others. Tr. 728. Dr. Higa opined that plaintiff would be off task ten percent of a normal workweek and would miss work at least two days per month due to his mental healthy symptoms. *Id.* She reported that plaintiff "should function relatively well in the context of working alone in a highly predictable environment," but that when he "gets emotionally flooded and panicky he would likely take a day off work" Tr. 730. The ALJ found both of Dr. Higa's documents not persuasive but determined that the letter has some value when considered along with the July 2021 assessment. Tr. 21. The ALJ explained that Dr. Higa's assessment of marked mental limitations is inconsistent with her statement two months prior that where she said that plaintiff's mental impairment would not affect his ability to handle the "rigors" of organ donation. Tr. 21 (citing Tr. 641). The ALJ reasonably determined that Dr. Higa's medical opinion is inconsistent and unsupported by her own treatment records. Tr. 21.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court AFFIRMS the Commissioner's decision.

IT IS SO ORDERED.

DATED this 14th day of November, 2023.

ANDREW HALLMAN
United States Magistrate Judge